Donald E. HASE, as Administrator
C.T.A. of the Estate of Donald L.
Hase, Decedent, Appellant,

v.

AMERICAN GUARANTEE AND
LIABILITY INSURANCE
COMPANY, Respondent,

Midwest Area, Inc., et al., Respondents.

No. 46640.

Supreme Court of Minnesota.

March 4, 1977.

Wegner, Wegner & Amerman, and J. Derck Amerman, Minneapolis, for appellant.

Simon, Schneider & Zimmerman, and Charles S. Zimmerman, Minneapolis, for American Guarantee & Liability Ins. Co.

Coulter, Nelson & Sullivan, Mark Sullivan and Lyle R. Frevert, Minneapolis, for Midwest Area, Inc.

Heard before ROGOSHESKE, PETERSON, and TODD, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff's decedent initiated an action against defendants, alleging that the insurance coverage on certain commercial property owned by decedent had mistakenly and negligently been decreased, thus depriving decedent of an amount due him after fire damaged the insured property. The trial court dismissed plaintiff's suit with prejudice after ruling that plaintiff's evidence of negligence was inadmissible on the grounds that it was hearsay and immaterial. Plaintiff appeals, seeking a reversal of the evidentiary rulings and a new trial. We affirm.

The present controversy arose after a fire severely damaged the premises of Reliable Cycle Co., a business owned by decedent Donald L. Hase and insured under a policy issued by defendant American Guarantee and Liability Insurance Company (American Guarantee). Decedent had purchased the policy from defendant James Nesser, an agent of defendant Midwest Area, Inc., an insurance sales office. American Guarantee paid decedent $30,000 for damage to contents. That amount represents the policy limit stated in a change endorsement attached to the policy. Decedent brought suit for an additional amount of insurance. He claimed that Nesser had negligently erred in decreasing the contents coverage from $60,000 to $30,000 rather than changing the inventory coverage as decedent had allegedly requested prior to the fire.

Decedent died after initiating the suit. His son, Donald E. Hase, was appointed administrator c.t.a. of the estate and the parties agreed to substitution of the son as plaintiff.

At trial, plaintiff attempted to introduce testimony of certain statements of the decedent. The court ruled that these statements were hearsay and inadmissible. Plaintiff also sought to introduce a copy of the insurance policy previous to the one in effect at the time of the fire. According to plaintiff, the expired insurance policy had an increasing-and-decreasing inventory provision appropriate to the seasonal nature of the motorcycle sales business, while the new policy had no such provision for fluctuating coverage. Plaintiff argued that this is "circumstantial evidence of a reason for Mr. Hase to change the inventory rather than the contents." The trial court ruled the expired policy immaterial in the absence of some proof that the decedent had contracted for the same terms in the second policy as in the first, or had otherwise relied upon it.

At oral argument, plaintiff conceded that the evidence of the expired policy standing alone, without the evidence of decedent's statements, would not support a verdict for plaintiff. Thus the dispositive issue presented is whether the trial court erred in excluding as hearsay the statements of decedent.

In his offer of proof, plaintiff stated: " * * *—[I]f Mr. Kottke [an employee of decedent] were allowed to testify to the jury, he would state in substance that after the fire and until talking to Mr. Nesser when Mr. Nesser returned from his fishing trip, which would be within several days subsequent to July 12, 1973 [the date of the fire], Mr. Hase expressed no emotion over the insurance consequences of the fire. Upon talking to Mr. Nesser, but not in Mr. Kottke's presence, he became quite angry and upset and told Mr. Kottke that he had ordered a change in the policy but that Mr. Nesser had made a mistake, and instead of changing the increasing and declining inventory coverage he reduced the contents coverage instead."

Plaintiff made a second offer of proof of almost identical testimony from decedent's two sons:

"If Donald Hase and Daniel Hase were allowed to testify to the jury, they would state in substance that at approximately the same time after the fire and two or three days after talking to Mr. Nesser, the decedent Mr. Hase became quite angry, and told them on at least one occasion each that Mr. Nesser had made a mistake and had reduced the wrong cov-

erage; and that he had not received a copy of the change order, and that if he had done so he would have corrected it immediately to apply to the inventory."

Plaintiff argues that this testimony should be admitted under any one of three exceptions to the hearsay rule: 1) excited utterance or res gestae; 2) state of mind; 3) "catch-all" exception, Rules 803(24) and 804(b)(5), Federal Rules of Evidence.

1. In *Beebe v. Kleidon*, 242 Minn. 521, 526, 65 N.W.2d 614, 617 (1954), we defined the elements of the res gestae or excited utterance exception:

" * * * To come within this exception to the hearsay rule, the declaration must follow a startling occasion; it must be made before there is time for the declarant to reflect upon the impacts of the statement; and it must relate to the startling occasion."

The essence of the excepted statements is spontaneity.

" * * * The theory of the res gestae rule is that utterances, accompanying or forming part of a transaction or occurrence spoken spontaneously in response to nervous stimulation produced by the transaction or occurrence, are admissible to explain or characterize it. Although such statements are hearsay, they derive their sanction as evidence from the fact that the immediate impact of the circumstances of their utterance eliminates intention and opportunity for fabrication to such an extent as to be a reasonable substitute for an oath." *Fenton v. Minneapolis Street Railway Co.*, 252 Minn. 75, 82, 89 N.W.2d 404, 410 (1958).

■ Indicia of spontaneity include the lapse of time between the startling occurrence and the statement; the self-serving or incriminating nature of the statement;

whether the statement was made in response to a question; the motive and opportunity for fabrication; and the natural excitement of the declarant. *Beebe v. Kleidon*, 242 Minn. 521, 526, 65 N.W.2d 614, 618. The issue here is whether, assuming a conversation can be a "startling occasion,"[1] decedent's response to it was spontaneous, thereby providing guarantees of its trustworthiness and eliminating the need for the hearsay rule. The determination of whether an exception is established is left largely within the sound discretion of the trial court. *Beebe v. Kleidon, supra; Fenton v. Minneapolis Street Railway Co., supra.*

■ It is not clear whether the testimony would be that decedent accused Nesser of a mistake[2] and then *repeated* the accusation to Kottke and 2 or 3 days later to his sons or whether the accusation was *first* made to Kottke. In either event, the statement to his sons was repetitious which is the antithesis of spontaneous. The repetitious nature of the statement and the lapse of time between the statement and the alleged startling occurrence, to say nothing of the self-serving nature[3] of the statement, support the conclusion that the statement was not an "excited utterance."

As for Kottke's testimony, decedent allegedly spoke to him after speaking to Nesser and out of Nesser's presence. No time frame was stated in the offer of proof although in plaintiff's brief it alleges "immediately after being so informed by Mr. Nesser, Mr. Hase became angry and enraged by Mr. Nesser's mistake and promptly informed the employee, Mr. Kottke, and his two sons."

■ Given the lack of precision as to time lapse, the nature of the startling event, the motive and opportunity for fabri-

---

1. Most cases involve startling occasions such as fires or automobile accidents. In this case, decedent's alleged statements were not provoked by the fact of the fire but by defendant Nesser's statement that decedent's fire insurance coverage was limited to $30,000.

2. Nesser denied that such an accusation was made.

3. The fact that a statement is self-serving is not alone reason to refuse to allow it in evidence under an exception to the hearsay rule. *Fenton*

cation,[4] and the self-serving nature of the statement, we hold that the trial court did not abuse its discretion in refusing to admit this statement under the rubric of the res gestae exception.

■■ 2. Plaintiff would characterize as declarations of state of mind statements made by decedent while "angry and upset." Decedent's alleged assertions that he ordered a change but that Nesser changed the wrong coverage are not statements of decedent's then existing mental, emotional, or physical condition. They are, rather, statements explaining why decedent was angry and upset. The exception for declarations of state of mind does not embrace statements made to explain the *cause* of the mental or emotional condition. McCormick, Evidence, § 291, p. 690; § 294, p. 696.

Plaintiff cites *Scott v. Prudential Ins. Co.* 203 Minn. 547, 282 N.W. 467 (1938), and *Mathews v. Great Northern Ry. Co.*, 81 Minn. 363, 84 N.W. 101 (1900), in support of his argument. Those cases involve statements of intent admitted for the light they shed upon events which occurred subsequent to the time the statements of intent were made. Plaintiff's proffered testimony is not of this type. We hold the "state of mind" exception inapplicable to the facts of this case.

■ 3. Plaintiff would have us in this case adopt and apply the "catch-all" exception of Rules 803(24) and 804(b)(5), Federal Rules of Evidence.[5] Such a rule has not been adopted in this state,[6] and we decline to forecast either its adoption or, if adopted, its application with respect to the "equiva-

lent circumstantial guarantees of trustworthiness" asserted in this case by plaintiff.

Affirmed.

---

*v. Minneapolis Street Railway Co.*, 252 Minn. 75, 89 N.W.2d 404 (1958).

4. Contrary to plaintiff's assertion, the fact that decedent did not expect to die before trial but fully expected to be able to testify does not eliminate all motive to fabricate.

5. Rules 803(24) and 804(b)(5), Federal Rules of Evidence, provide: "*Other exceptions*—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the

statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and interests of justice will best be served by admission of the statement into evidence * * *."

6. Rules of Evidence for this state are presently under study, with a hearing upon their adoption scheduled for March 17, 1977.